**FILED**

**July 17, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 11:16 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **TERRY LATCH,** | ) | **Docket No. 2016-07-0074** |
| **Employee,** | ) | |
| **v.** | ) | |
| **A&A EXPRESS,** | ) | **State File No. 71416-2015** |
| **Employer,** | ) | |
| **And** | ) | |
| **LIBERTY MUTUAL INS. CO.,** | ) | **Judge Allen Phillips** |
| **Insurance Carrier.** | ) | |

---

### EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS
### AND
### DENYING TEMPORARY DISABILITY BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on June 26, 2017, upon the Request for Expedited Hearing filed by Terry Latch. Mr. Latch requested medical and temporary disability benefits for an alleged neck injury. A&A contended that Mr. Latch was not entitled to medical benefits because his neck injury did not arise out of his employment. Additionally, A&A contended that even if the injury did arise out of the employment, Mr. Latch was not entitled to temporary benefits because he failed to accept a light duty position. Accordingly, the determinative legal issues are whether Mr. Latch's neck injury arose out of his employment at A&A and whether he justifiably refused an offer of light duty. The Court holds he is likely to prevail at a hearing on the merits regarding the arising out of issue but not on the temporary disability issue. Accordingly, it grants only Mr. Latch's request for medical benefits at this time.

### History of Claim

Mr. Latch drove a truck for A&A. On September 7, 2015, while throwing a restraining strap over a trailer, he felt two "pops" in his right shoulder. A&A accepted the claim and authorized medical treatment with Dr. Kelly Pucek, an orthopedic surgeon.

1

On September 16, Dr. Pucek recorded Mr. Latch's description of the incident and because of his "level of pain" recommended an MRI of the shoulder. The MRI revealed rotator cuff tearing and a fracture of the distal clavicle. Dr. Pucek did not believe the findings "[were] a surgical problem," and elected to treat Mr. Latch conservatively. However, he restricted Mr. Latch from driving because of the prescribed medications, and A&A began paying temporary disability benefits.

Four weeks later, Mr. Latch complained of "far more pain" than Dr. Pucek would expect and "numbness" in his fingers. Dr. Pucek sent Mr. Latch for therapy, continued his medications, and continued to restrict him from driving. A&A continued paying temporary disability benefits.

At a December 17 visit to Dr. Pucek, Mr. Latch had not improved. Though Dr. Pucek maintained that Mr. Latch's complaints remained "way out of proportion" to what he would expect, he noted the possibility of them coming from "nerve root pressure out of his neck." Thus, he recommended nerve studies of the right arm and an MRI of the neck. Dr. Pucek also modified Mr. Latch's restrictions from no driving to "little to no use" of the right arm.

Because of this modification, A&A told Mr. Latch he could return to work at a desk job. Mr. Latch testified his supervisor said he could simply sit at a desk "and count flies if need be." Despite this offer, Mr. Latch felt his degree of pain was too intense to attempt a work return. He also expressed concern about driving from his home to A&A. Thus, he declined the light duty offer, and A&A terminated his temporary disability benefits.

On January 4, 2016, Dr. Pucek noted the nerve testing revealed "moderate cubital tunnel syndrome," and the MRI of the neck revealed moderate to severe stenosis at multiple levels. Dr. Pucek thought the MRI findings were the "most likely culprit [for Mr. Latch's] level of pain." Accordingly, he referred Mr. Latch to Dr. Eric Homberg for a cervical pain block to "see how his symptoms respond[ed]." However, Mr. Latch declined the block because of the inherent medical risks. Dr. Homberg continued the same restrictions placed by Dr. Pucek. On July 1, Dr. Pucek referred Mr. Latch to a neurosurgeon to treat his neck. A&A resumed temporary disability benefits.

After the referral, A&A provided authorized treatment from Dr. Fereidoon Parsioon, a neurosurgeon. On August 18, Dr. Parsioon noted the history of throwing the strap and found Mr. Latch to be in severe pain. He reviewed the cervical MRI and interpreted it as showing herniated discs at the C4/5 and C5/6 levels of the spine. Dr. Parsioon "told [Mr. Latch] that his pain in his neck and right upper extremity is coming from his neck and is related to his work injury." He also noted that, had he been treating him "in January 2016 after his cervical MRI was performed, I would have treated him . . .

2

for his neck problems and kept him off work." Because the MRI was seven or eight months old, Dr. Parsioon recommended obtaining another study. He took Mr. Latch completely off work.

Following the repeat MRI, Dr. Parsioon recommended fusing a third level of Mr. Latch's cervical spine, namely the C3/4 level. However, Mr. Latch decided against surgery after Dr. Parsioon advised him that he would have to quit smoking before he would perform a spinal fusion. However, in January 2017, Mr. Latch returned to Dr. Parsioon in pain that was "so high that he [did] not have any quality of life." He wished to proceed with surgery and "promised" to quit smoking.

At that point, A&A requested Mr. Latch undergo an independent medical evaluation (IME) with Dr. John Brophy, another neurosurgeon. Dr. Brophy performed the IME on January 25 and agreed with Dr. Parsioon that Mr. Latch would be a candidate for a cervical fusion at C4/5 and C5/6 but not at C3/4 because the changes there were not severe enough for surgery. However, in Dr. Brophy's opinion, Mr. Latch sustained "no anatomic change . . . as a result of his work injury," and the surgery was needed because of only pre-existing conditions. Dr. Brophy stated he did not believe the action of throwing the strap was "severe enough to reach the 51 percent threshold to justify surgical intervention through [Mr. Latch's] workman's compensation carrier."

On October 26, Mr. Latch filed a Petition for Benefit Determination (PBD) requesting temporary disability benefits for the period between when A&A discontinued them on December 22, 2015, until the reinstatement of benefits on July 1, 2016. A&A contested the request because of its offer of light duty. The parties could not resolve the dispute, and the mediating specialist issued a Dispute Certification Notice on December 14. After Dr. Brophy said the neck injury was not work-related, A&A filed a "Motion to Amend Dispute Certification Notice" to add "Compensability" as a disputed issue, and the Court granted its motion.

At the June 26 hearing, the Court heard proof on the causation and temporary benefits issues. Mr. Latch testified he was in extreme pain and wanted surgery. He stated his quality of life was so poor that he felt he had no choice but to proceed. He testified he never had neck problems before the injury. Regarding his claim for temporary disability, Mr. Latch stated he could not work in December 2015 because of his level of pain. He claimed he could not use his arm or turn his head at that time.

In argument, Mr. Latch asked the Court to apply a presumption of correctness to Dr. Parsioon's opinion because he was the treating physician. He argued Dr. Parsioon's opinion and the medical proof as a whole "warrant[ed] an order for medical benefits" in light of the standard of *McCord v. Advantage Human Resourcing*, TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8 (Mar. 27, 2015). He also contended Dr. Parsioon's opinion that he

3

would have restricted Mr. Latch from working had he seen him in January 2016, coupled with his own testimony that he was unable to work, was sufficient to award temporary benefits from December 17, 2015, through June 30, 2016.

For its part, A&A argued that Dr. Brophy's causation opinion rebutted that of Dr. Parsioon by a preponderance of the evidence. Namely, the problems in Mr. Latch's neck were degenerative and that the "throwing motion" Mr. Latch described would not have caused a disc herniation. Regarding temporary disability benefits, A&A contended it properly terminated those benefits when Mr. Latch refused its offer of light duty work. Further, it contended Dr. Parsioon's opinion that he would have restricted Mr. Latch as of January 2016 is not sufficient to overcome Dr. Pucek's opinion that Mr. Latch could have performed light duty. Thus, Mr. Latch cannot rely upon Dr. Parsioon's opinion to support his claim for temporary benefits.

## Findings of Fact and Conclusions of Law

### Standard applied

Because this case is in the posture of an Expedited Hearing, Mr. Latch must come forward with sufficient evidence for the Court to determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016).

### Causation

To be compensable, Mr. Latch must prove his alleged injury arose primarily out of and in the course and scope of his employment at A&A. To do so, he must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, his injury was more likely than not caused by the incident when considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14) (2016).

Since the parties rely on opposing medical opinions, the Court must determine which physician's testimony to accredit. In making this determination, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Brees v. Escape Day Spa & Salon*, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015).

In applying the *Brees* factors, the Court finds the qualifications of both doctors are equal; each physician is a neurosurgeon with many years' experience. Likewise, the

4

Court finds the information available to both Drs. Parsioon and Brophy is identical; each physician examined Mr. Latch after taking his history and reviewing the medical records and MRIs. Thus, the Court focuses on the remaining factors.

Regarding the circumstances of their examination, the Court accredits Dr. Parsioon, an authorized treating physician. Because Dr. Parsioon served as a treating physician, his opinion is afforded a presumption of correctness subject to rebuttal by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (2016). Dr. Parsioon saw Mr. Latch on several occasions. "It seems reasonable that the physician having greater contact with [an employee] would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 677 (Tenn. 1991). This is particularly true when considering the medical proof "in conjunction with [Mr. Latch's] lay testimony . . . as to how the injury occurred and [his] subsequent condition." *Nance v. Randstad*, 2015 TN Wrk. Comp. App. Bd. LEXIS 15, at *9 (May 27, 2015). As Dr. Parsioon explained:

> [T]he way that we deal with causation, every single one of us, is you rely on the patient to tell you, and if they have seen other doctors, you rely on their notes to see whether they have changed the story from one doctor to the other, rely on the insurance company and the physical therapy – all those people that have seen the patient. The most important thing for me is what the patient tells me about the nature of injury, and if I don't have any other evidence that this man or this woman had another complaint like this in the past.

The Court finds Mr. Latch provided a consistent history to all physicians and provided credible testimony concerning the incident, its effects on him, his physical condition prior to event, and the symptoms he suffered following the event. The Court believes him when he says he never had neck issues needing medical treatment before the incident and believes him when he says his pain is to the point of needing treatment now. Dr. Parsioon considered the history Mr. Latch described and provided a plausible and persuasive causation opinion.

Arguing to the contrary, A&A contends Dr. Brophy rebutted Dr. Parsioon. The court disagrees. In so doing, the Court contrasts Dr. Parsioon's opinion, based upon multiple visits, with the one-time evaluation of Dr. Brophy at the request of A&A. Based upon that one visit, Dr. Brophy testified that he believed the throwing motion made by Mr. Latch is inconsistent with causing a herniated disc. Instead, he thought Mr. Latch's symptoms stemmed from degenerative changes that "occur over time and [were] not related to a single event such as throwing." He based this opinion on his experience "over the last 20-something years of evaluating patients with cervical radiculopathy" and stated that this experience prevents him from "understand[ing] how [a throwing motion]

5

stresses the neck." The Court finds this opinion less persuasive than the opinion of Dr. Parsioon, who based his opinion upon not only the objective studies but also Mr. Latch's history.

Finally, the Court finds the importance of medical information available to other experts supports Mr. Latch's position. Specifically, Dr. Homberg replied to A&A's insurance carrier that the "accident description [of Mr. Latch] throwing straps over his truck load" was "51% or more related" to Mr. Latch's cervical complaints. Likewise, Dr. Pucek believed the findings of the cervical MRI were the "most likely culprit" for Mr. Latch's level of pain. The Court credits these opinions over Dr. Brophy's and holds that these opinions, coupled with Dr. Parsioon's testimony, "contain[] the more probable explanation for Mr. Latch's need for medical treatment." *See Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991).

Thus, the Court holds Mr. Latch is likely to prevail at a hearing on the merits, and that he is entitled to the requested medical benefits. Because A&A approved Dr. Parsioon and he has undertaken treatment of Mr. Latch, it would be unfair and inefficient to interject another physician into the case. Thus, A&A shall continue its approval of Dr. Parsioon to treat Mr. Latch, up to and including the proposed surgery.

*Temporary disability benefits*

Mr. Latch requested temporary *total* disability benefits (TTD) for the period from December 22, 2015, through June 30, 2016. To establish entitlement to TTD, Mr. Latch must show he (1) became disabled from working due to a compensable injury; (2) a causal connection between the injury and his inability to work; and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Though phrased only as a TTD request, the Court notes Mr. Latch also might be entitled to temporary *partial* disability (TPD) benefits for the requested period. This is true because he was arguably able to resume some gainful employment, but had not reached maximum recovery. *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016). Because of the different criteria for each type of benefits, the Court must examine Mr. Latch's entitlement to each type of temporary benefits in the context of both doctors' opinions. When so doing, the Court holds Mr. Latch is not entitled to either type of temporary disability benefits.

First, Dr. Pucek did not totally disable Mr. Latch from working; hence, the Court finds Mr. Latch is not entitled to TTD based upon Dr. Pucek's opinion. However, he may still be entitled to TPD based upon that opinion depending upon "the reasonableness of [A&A's] action in offering a light duty position and the reasonableness of [Mr. Latch] in declining the offer." *Frye v. Vincent Printing Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS

6

34, at *16 (Aug. 2, 2016). When considering the actions of the parties, the Court finds Mr. Latch unreasonably declined A&A's offer of light duty and accordingly denies his request for temporary benefits to the extent that he might be entitled to TPD.

In *Hackney*, the Appeals Board noted that an employee is not entitled to temporary partial disability benefits when he does not make a good faith effort to return to work after an employer willingly provides work within his restrictions. *Hackney*, at *11-12, citing *Kelley v. D & S Residential Holdings*, No. E2011-02392-WC-R3-WC, 2012 Tenn. LEXIS 632 (Tenn. Workers' Comp. Panel Sept. 4, 2012). In *Kelley*, the court denied the employee's request for TPD because that employee's "ability to return to work and earn the same wage was not foreclosed by a partial disability," but rather "was foreclosed by [the employee's] subjective belief that she could not perform the job." *Kelley*, at *30.

Here, Mr. Latch confirmed that he refused to accept A&A's offer for light duty because he subjectively believed he could not perform the job. However, the light duty required him to merely sit at a desk. The Court finds that Mr. Latch's complete refusal to attempt work at a position that he admits involved virtually no physical activity is unreasonable. Thus, the Court denies recovery of TPD benefits.

When examining Dr. Parsioon's opinion, the Court finds nothing to indicate he knew A&A offered Mr. Latch work within the restrictions placed by Dr. Pucek. Moreover, because Dr. Parsioon did not see Mr. Latch until August 18, 2016, he had no personal knowledge of Mr. Latch's condition in January 2016 or before. Under these circumstances, the Court finds Dr. Parsioon's theoretical opinion that he would have totally restricted Mr. Latch from working non-persuasive when compared to the opinion of Dr. Pucek. Thus, the Court denies Mr. Latch's claim for temporary benefits to the extent that he might receive temporary total disability based upon Dr. Parsioon's opinion.

**IT IS, THEREFORE, ORDERED** as follows:

1. AAA shall provide Mr. Latch reasonable and necessary medical treatment with the authorized treating physician, Dr. Parsioon, including surgery. Mr. Latch or Dr. Parsioon shall provide their billing to A&A.

2. The Court denies Mr. Latch's claim against A&A for temporary disability benefits at this time.

3. This matter is set for a Scheduling (Status) Hearing on **Thursday, October 26, 2017, at 10:00 a.m. Central time**. You must call toll-free at 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed,

7

compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED this the 17th day of July, 2017.**

_____
**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Medical records of:
   - Dr. Eric Homberg
   - Dr. Fereidoon Parsioon
   - Dr. Kelly Pucek
   - Jackson Madison County General Hospital
   - Dr. John Brophy
2. Deposition of Dr. Fereidoon Parsioon
3. Deposition of Dr. John Brophy
4. First Report of Work Injury

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Joint Motion for Continuance
5. Order of Continuance and Setting Motion to Amend Dispute Certification Notice
6. Motion to Amend Dispute Certification Notice
7. Order Granting Amendment of Dispute Certification Notice
8. Employee's Pre-Hearing Brief
9. Employer's Pre-Hearing Brief

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 17th day of July, 2017.

| Name | Via Email | Service Sent To: |
|------|-----------|------------------|
| Spencer R. Barnes, Esq., Attorney for Employee | X | spence@morrisonandbarnes.com chandra@morrisonandbarnes.com |
| Shaterra Reed, Esq., Attorney for Employer | X | shaterra.reed@libertymutual.com lesley.burton@libertymutual.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**